# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                    BANKRUPTCY PROCEEDING

**STEADIVEST, LLC**                                       CASE NO. 09-01013-EE

**CONSOLIDATED WITH:**

**STEADIVEST DEVELOPMENT, LLC**
**F/K/A JACKSON PROPERTY LIQUIDATORS, LLC**               CASE NO. 09-01823-EE

**STEADIVEST CAPITAL, LLC**
**F/K/A TACTICAL FINANCIAL SOLUTIONS, LLC**               CASE NO. 09-01824-EE

**MTW INVESTMENT FINANCING, LLC**                         CASE NO. 09-01825-EE

  DEBTORS                                                 CHAPTER 7

---

**MIKE YARBRO, SUE YARBRO,**
**MYSY RENTAL, INC.,**
**RAY MONTGOMERY, JR.,**                                  PLAINTIFFS
**LEE BREELAND, and**
**ALEX BREELAND**

V.                                                        ADV. PROC. NO. 12-00050-KMS

**MARSHALL WOLFE, JACK HARRINGTON,**
**JUSTIN ADCOCK, PATRICK MCCRANEY,**                      DEFENDANTS
**JOEL TRAVELSTEAD and JOHN DOES I-X**

## MEMORANDUM OPINION

Before the Court is the Motion for Judgment on the Pleadings (Adv. Dkt. No. 17)[1] filed

by Defendant Joel Travelstead; the Response in Opposition to Defendant Joel Travelstead's

Motion for Judgment on the Pleadings (Adv. Dkt. No. 46) filed by Plaintiffs Mike Yarbro, Sue

Yarbro and MYSY Rental, Inc.; the Motion for Judgment on the Pleadings (Adv. Dkt. No. 65)

filed by Defendant Jack Harrington; the Motion for Judgment on the Pleadings (Adv. Dkt. No.

---

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary
proceeding, Adv. Proc. No. 12-00050-KMS, are cited as "(Adv. Dkt. ___)".

67) filed by Defendant Justin Adcock; the Motion for Judgment on the Pleadings (Adv. Dkt. No. 69) filed by Defendant Patrick McCraney; and the Reply to Motion for Judgment on the Pleadings (Adv. Dkt. No. 98) filed by Defendant McCraney.  Also before the Court is the Motion for Leave to File Second Amended Complaint (Adv. Dkt. No. 75) filed by Plaintiffs MYSY Rental, Inc., Raymond Montgomery, Jr., Mike Yarbro, and Sue Yarbro; the Motion for Leave to File Second Amended Complaint filed by Plaintiffs Alex Breeland and Lee Breeland (Adv. Dkt. No. 76); the Response to Motion for Leave to File Second Amended Complaint (Adv. Dkt. No. 91) filed by Defendant Travelstead; the Response to Plaintiff's Motion for Leave to Amend (Adv. Dkt. No. 97) filed by Defendant McCraney; the Motion to Strike Amended Complaint (Adv. Dkt. No. 88) filed by Defendant Travelstead; the Third Amended Complaint (Adv. Dkt. No. 90); and the Motion to Strike Third Amended Complaint (Adv. Dkt. No. 99) filed by Defendant Travelstead.[2]

This matter has been pending since July 10, 2009.  Despite the fact that more than three years have passed since this action was originally filed, the case has not progressed past the initial pleading stage.  Through a series of events, this case was ultimately referred to this Court on August 2, 2012, for determination of motions for judgment on the pleadings filed by the Defendants and motions to amend filed by Plaintiffs.  At the hearing on this matter, the parties consented to the entry of final judgment by this Court.[3]  For the reasons stated below, the Court finds that the motions for judgment on the pleadings (Adv. Dkt. Nos. 17, 65, 67, 69) should be granted.  The motions to amend (Adv. Dkt. Nos. 75, 76) should be denied without prejudice as

---

[2] Also before the Court are the numerous supplements and briefs in support of the various motions and responses filed by the parties.

[3] On October 5, 2012, a hearing was held on the motions for judgment on the pleadings and motions to amend; and the Court took the matter under advisement.

they relate to Defendants Harrington, Adcock and McRaney.  The motion to amend filed by the Yarbros, MYSY Rental, Inc., and Montgomery (Adv. Dkt. No. 75) should be denied with prejudice with regard to the claims against Defendant Travelstead.

## FINDINGS OF FACT

1.   Procedural Background

This action was originally filed in the Circuit Court of Rankin County, Mississippi on July 10, 2009.[4]  The Complaint sought recovery from Marshall Wolfe, Jack Harrington, Justin Adcock, Patrick McCraney and Joel Travelstead for alleged fraud, negligent misrepresentation, conversion and conspiracy regarding investments made by Plaintiffs in certain companies involved in the sale and/or rehabilitation of real estate.  Before any party answered, Plaintiffs filed their Amended Complaint on August 26, 2009.   The Amended Complaint added Investlinc/TFS Income Fund, LLC and The Investlinc Group, LLC as defendants.  Travelstead filed a Motion to Dismiss on September 28, 2009, asserting that, under Mississippi law, Plaintiffs had failed to make any specific allegations of fraud or negligent misrepresentation against Travelstead.[5]  The Motion to Dismiss also addressed the sufficiency of Plaintiffs' claims for conversion and conspiracy.  On September 30, 2009, the action was removed to the United States District Court for the Southern District of Mississippi, Civil Action No. 3:09-cv-00590-HTW-LRA.[6]

---

[4]  The Complaint was filed by the current Plaintiffs and seven other individuals who have since dismissed their claims.

[5]  The newly added corporate defendants filed a motion to dismiss on or about September 18, 2009.

[6]  The Notice of Removal asserted jurisdiction under 28 U.S.C. §§ 157, 1334 & 1452, since the Complaint made claims against wholly-owned subsidiaries of Steadivest, LLC, a debtor in the United States Bankruptcy Court for the Southern District of Mississippi, Case No. 09-01013-EE.  The Notice of Removal also asserted federal jurisdiction under the Federal Arbitration Act, 9 U.S.C. § 1, et. seq, (the "FAA").  The District Court appeared to find that the bankruptcy court had jurisdiction.  See Order Referring Case to Bankruptcy, (Adv. Dkt. No. 1, at 8-9) ("The Bankruptcy Court has proceeded as though, in accordance with this court's bench ruling, it has jurisdiction of the case.").  Likewise, Honorable Neil P. Olack, when faced with a renewed motion to remand, held that "the District

After removal, Travelstead, on October 22, 2009, filed another motion to dismiss in which he asserted that, under federal law, Plaintiffs had failed to make any specific allegations of fraud or negligent misrepresentation against him.  Travelstead again addressed the sufficiency of Plaintiffs' claims against him for conversion and conspiracy.  This motion was accompanied by a memorandum brief that clearly outlined Travelstead's legal arguments in support of his motion.  Plaintiffs' responded to the motion on April 19, 2010.  In the interim, Defendants McRaney, Harrington and Adcock filed their individual answers to the First Amended Complaint.  Additionally, the Plaintiffs filed a motion to remand and Defendant McRaney filed a motion to refer the case to the bankruptcy court or in the alternative to compel arbitration.  On April 20, 2010, the District Court held a hearing on McRaney's motion for referral to the bankruptcy court and for arbitration.  According to a minute entry on the docket, the District Court granted the motion for referral and denied the motion for arbitration.  On April 30, 2012, the District Court entered an order granting the motion to refer the case to the bankruptcy court, denying the motion for arbitration and finding both the motion to dismiss filed by Travelstead and the motion to remand to be moot.

The matter was referred to the bankruptcy court and assigned Adversary Proceeding No. 12-00050-NPO.  After referral, Travelstead filed an answer, an amended answer and a motion to dismiss the adversary proceeding.  On May 30, 2012, Travelstead also filed his motion for

---

Court's ruling in its Order of Reference is the "law of the case" and will not be disturbed."  (Adv. Dkt. No. 64).  As stated herein, the parties have consented to a final judgment by this Court.

All of the Plaintiffs filed proofs of claim in the *Steadivest* case.  As a result, the outcome of this litigation could have a conceivable effect on the underlying bankruptcy estate in the event Plaintiffs obtain a judgment against any of the Defendants and recover on the judgment. *Feld v. Zale Corp. (In re Zale)*, 62 F.3d 746, 752 (5th Cir. 1995);  *see Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 297 (3d Cir. 2012) ("related to" jurisdiction exists where creditor's recovery from third party could alter amount of creditor's recovery from estate).  The existence of an arbitration agreement subject to the FAA does not, without an independent basis for jurisdiction—ie. "related to" jurisdiction—confer jurisdiction on this Court. *Trawick v. Asbury MS Gray-Daniels, LLC*, 244 F. Supp. 2d 697, 699 (S.D. Miss. 2003) (FAA provides no independent basis for removal jurisdiction); *see Volvo Trucks N. Am., Inc.*, 666 F.3d 932, 936 (5th Cir. 2012).

judgment on the pleadings with supporting memorandum.  Plaintiffs renewed their motion to remand and in the alternative sought abstention; and Defendants McRaney, Harrington and Adcock filed joinders in Travelstead's motion for judgment on the pleadings.  On June 25, 2012, the Honorable Neil P. Olack held a hearing on the then pending motions and determined that the joinders in Travelstead's motion for judgment on the pleadings would not be allowed because of the difference in operative facts for the claims against each Defendant.  McRaney, Harrington and Adcock were instructed to file their own individual motions for judgment on the pleadings by July 2, 2012.[7]  At the hearing, Plaintiffs represented that it was their intention to file another amended complaint.  Judge Olack instructed Plaintiffs to amend their complaint by July 2, 2012. All newly filed motions were to be heard in August.

2.  The Complaint and Amended Complaint

Neither the original Complaint nor the Amended Complaint made any specific factual allegations regarding Harrington, Adcock, McRaney or Travelstead.  Instead, both complaints addressed the conduct of "the defendants" or specifically addressed conduct of Wolfe.[8]  The Amended Complaint, which is the subject of the pending motions for judgment on the pleadings, set forth no specific factual allegations regarding Harrington, Adcock, McRaney or Travelstead, other than the allegation than Wolfe, Joel Travelstead and Ray Montgomery, Jr. created MTW a Mississippi Limited Liability Company in 2003. (Adv. Dkt. 1-5 at ¶ 30).

---

[7] An order was entered June 26, 2012, denying the joinders filed by McCraney, Harrington and Adcock, but granting them leave to file a motion under Fed. R. Bankr. P. 7012(b) by July 2, 2012.  (Adv. Dkt. No. 56).

[8] The Court entered orders granting Plaintiffs' motions for default judgment as to Wolfe, therefore any allegations relating to Wolfe in the Amended Complaint are irrelevant to the pending matter. (Adv. Dkt. Nos. 113, 134).

3.  The Proposed Third Amended Complaint[9]

The proposed Third Amended Complaint, which is the subject of the motions to amend, contains 116 paragraphs and is 47 pages long excluding exhibits.  In their proposed Third Amended Complaint, Plaintiffs made the following specific factual allegations regarding Harrington, Adcock, McRaney and Travelstead:

1.  Harrington

- In early 2008, soon after the 2008 Offering, Harrington was paid in excess of $300,000.  Harrington received most, if not all, of the payment on his promissory note when he departed Steadivest in June 2008.  Harrington received a large payment which presumably came from the 2008 Offering. (Adv. Dkt. No. 90, at ¶ 22).

- Wolfe and Harrington were making presentations about a new 2008 Offering while Steadivest, LLC was in poor financial condition. (Adv. Dkt. No. 90, at ¶ 24).

- In summer of 2008, Montgomery started visiting the Steadivest office and having lunch meetings with Adcock, McCraney and Harrington. (Adv. Dkt. No. 90, ¶ 32).

- In August 2008, Montgomery asked Wolfe to cash out his investment but Wolfe did not.  Harrington, Adcock and McCraney left Steadivest shortly thereafter. (Adv. Dkt. No. 90, ¶ 33).

---

[9] Plaintiffs filed a proposed Second Amended Complaint that still identified Investlinc/TFS Income Func, LLC and The Investlinc Group, LLC as defendants.  Pursuant to a settlement with the corporate defendants and a court order, Plaintiffs filed a Third Amended Complaint which simply deleted the references to the corporate defendants.  By agreement, the Third Amended Complaint was substituted for the Second Amended Complaint as Exhibit A to the motions to amend.

- In early 2008, Lee Breeland attended a presentation made by Wolfe and Harrington. (Adv. Dkt. No. 90, ¶ 36).

- Lee Breeland had several discussions with Wolfe, Adcock and Harrington regarding the purchase of a farm in Canton, Mississippi, and there was never any indication that Steadivest was in financial trouble. (Adv. Dkt. No. 90, at ¶ 37).

- In March 2008, Lee Breeland gave a check to Wolfe and Harrington. (Adv. Dkt. No. 90, at ¶ 38).

- Alex Breeland discussed a residential portfolio with Wolfe, Harrington, and Adcock.  After further discussions with Wolfe and Harrington, he made another investment. (Adv. Dkt. No. 90, at ¶ 42).

- In July 2008, Alex Breeland made another purchase after meetings with Wolfe, Harrington and Adcock. (Adv. Dkt. No. 90, at ¶ 43).

2.  Adcock

- In 2008, after hearing that Adcock, Harrington and McCraney had left Steadivest, the Yarbros contacted Adcock and he told them that everything was fine with the company. (Adv. Dkt. No. 90, at ¶ 29).

- In summer of 2008, Montgomery started visiting the Steadivest office and having lunch meetings with Adcock, McCraney and Harrington. (Adv. Dkt. No. 90, at ¶ 32).

- In August 2008, Montgomery asked Wolfe to cash out his investment but Wolfe did not.  Harrington, Adcock and McCraney left Steadivest shortly thereafter. (Adv. Dkt. No. 90, at ¶ 33).

7

- Lee Breeland had several discussions with Wolfe, Adcock and Harrington regarding the purchase of a farm in Canton, Mississippi, and there was never any indication that Steadivest was in financial trouble. (Adv. Dkt. No. 90, at ¶ 37).

- Alex Breeland discussed a residential portfolio with Wolfe, Harrington, and Adcock.  After further discussions with Wolfe and Harrington, he made another investment. (Adv. Dkt. No. 90, at ¶ 42).

- In July 2008, Alex Breeland made another purchase after meetings with Wolfe, Harrington and Adcock. (Adv. Dkt. No. 90, at ¶ 43).

3. McCraney

- In the summer of 2008, Montgomery started visiting the Steadivest office and having lunch meetings with Adcock, McCraney and Harrington. (Adv. Dkt. No. 90, at ¶ 32).

- In August 2008, Montgomery asked Wolfe to cash out his investment but Wolfe did not.  Harrington, Adcock and McCraney left Steadivest shortly thereafter. (Adv. Dkt. No. 90, at ¶ 33).

4. Travelstead

- In December 2003, Mike and Sue Yarbro met with Wolfe and Travelstead at their home.  The purpose of the meeting was for Wolfe to give the Yarbros promotional materials for an offering and to discuss an investment opportunity.  At the meeting in December 2003, Wolfe and Travelstead told the Yarbros that MTW was lending money to house flippers at two or three points per month until the houses sold and that MTW was taking the houses as

collateral. Wolfe and Travelstead told the Yarbros that Travelstead was an appraiser. Wolfe and Travelstead told the Yarbros that the loan to value ratio on any property would not exceed 65%. Wolfe and Travelstead promised to keep the Yarbros informed of any changes in the company. (Adv. Dkt. No. 90, at ¶ 25).

- Wolfe and Travelstead would call the Yarbros from time to time to solicit additional money. (Adv. Dkt. No. 90, at ¶ 27).

- The Yarbros went to lunch with Wolfe and Travelstead at Char in 2005 and 2006 (a total of 2 times) and were told that business was doing great. (Adv. Dkt. No. 90, at ¶ 29).

- In 2007, Wolfe solicited Montgomery to invest in TFS stating the Travelstead was no longer with the company. (Adv. Dkt. No. 90, at ¶ 31).

- MTW was created by Wolfe, Travelstead and Montgomery in 2003. (Adv. Dkt. No. 90 at ¶ 45).

- Wolfe and/or Travelstead managed, organized, and promoted the sale of promissory notes by MTW. (Adv. Dkt. No. 90, at ¶ 45).

- Wolfe and Travelstead personally appeared at the home of the Yarbros to induce them to purchase MTW notes. (Adv. Dkt. No. 90, at ¶ 45).

- Wolfe and/or Travelstead promoted promissory notes orally and through written materials that were distributed to the plaintiffs. (Adv. Dkt. No. 90, at ¶ 46).

## CONCLUSIONS OF LAW

1.  Standard of Review

Defendants are seeking judgment on the pleadings pursuant to Fed. R. Bankr. P. 7012 which incorporates Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009) *quoting Bell v. Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint that pleads facts merely consistent with a defendant's liability stops short of the plausibility standard for entitlement to relief. *Id.*  While a complaint need not contain detailed factual allegations, it must be dismissed unless it contains enough facts "to raise a right to relief above the speculative level." *Norwood v. Performance Ins. Servs., Inc.*, No. 2:10CV241 KS-MTP, 2011 WL 719609, at *2 (S.D. Miss. Feb. 22, 2011) (citing *Twombly*, 550 U.S. at 555)).  A complaint is insufficient to withstand dismissal if it contains no more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*

Plaintiffs are seeking to amend their complaints pursuant to Fed. R. Bankr. P. 7015 which incorporates Fed. R. Civ. P. 15.  Rule 15 permits amendments to pleadings as a matter of course in certain instances not applicable in this case and otherwise allows amendments "only with the opposing party's written consent or the court's leave" on the condition that amendments should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[L]eave to amend is by no means automatic." *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993).  Courts consider

"factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment'" when deciding whether to grant leave to amend. *Waldron v. Adams & Reese, LLP* (*In re Am. Int'l Ref. Inc.*), 676 F.3d 455, 466-67 (5th Cir. 2012) (*citing Southmark Corp. Schulte Roth & Zabel* (*In re Southmark Corp.*), 88 F.3d 311, 315 (5th Cir. 1996)).

As discussed, *supra*, the Amended Complaint contains no specific factual allegations regarding the individual Defendants. Because the factual allegations in the Amended Complaint are so deficient, there is virtually nothing for the Court to analyze. Therefore the Court's analysis is, for the most part, based on the allegations of the Third Amended Complaint, which contains at least some factual allegations against the Defendants. The analysis of the Amended Complaint under the motion for judgment on the pleadings standards is essentially the same analysis as that for determining whether granting leave to file the Third Amended Complaint would be futile. If the proposed Third Amended Complaint, which attempts to assert factual allegations against the Defendants, could not withstand a motion for judgment on the pleadings, the Amended Complaint, which does not assert any factual allegations against the Defendants, cannot withstand a motion for judgment on the pleadings.

2. Plaintiffs' Fraud Claims

Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake **shall** be stated with particularity." Fed. R. Civ. P. 9(b) (emphasis added). The particularity requirement "has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which

all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation." *Nazareth Int'l, Inc. v. J.C. Penney Corp.*, No. 304CV1265M, 2005 WL 1704793, at *1 (N.D. Tex. July 19, 2005) (citations omitted); *accord Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 667 (5th Cir. 2004) (purpose of rule is to "protect[] a defendant's reputation from the harm that general, unsubstantiated fraud accusations will cause and preventing a claimant from searching for a valid particular claim after filing suit") (internal citations omitted and emphasis added); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (The "heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, [and] reduces the number of strike suits . . . ."); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes."). For these reasons, Rule 9(b) requires that a "plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *United States ex rel. Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). Specifically, the particularity required by Rule 9(b) includes the "'time, place, and contents of the false representations,' . . . as well as the identity of the person making the representation and what that person obtained thereby." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179). The Fifth Circuit has stated that courts must "apply the rule with force, without apology." *Williams*, 112 F.3d at 178.

The only representations reflected in the Third Amended Complaint are those of Travelstead that the business was doing well in 2005 and 2006 and those of Adcock in 2008 that the business was doing well.  The complaint fails to set forth why these statements were fraudulent or what Travelstead or Adcock gained by such statements.[10]  *See Williams*, 112 F.3d at 177-78; *see also Sullivan v. Leor Energy LLC*, 600 F.3d 542, 551 (5th Cir. 2010).  Plaintiffs failed to identify any statements made by McRaney and merely assert that Harrington failed to disclose that the business was not doing well without setting out any factual or legal basis for any duty to disclose or any facts to support the allegation that the business was not doing well. Plaintiffs' allegations do not satisfy the pleading requirements of Rule 9(b).  Accordingly, the Court grants the Defendants' motions for judgment on the pleadings on the fraud claims.

Plaintiffs have requested time to conduct discovery regarding their fraud allegations asserting that the factual information is within the Defendants' knowledge.  The Fifth Circuit has held that fraud may be pled on information and belief when factual information is within the defendant's knowledge.  *Thompson*, 125 F.3d at 903.  However, the complaint must still state a factual basis for the belief. *Id.*  The exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.*  As noted above, the higher standard "stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). Plaintiffs have not pled their fraud claims with particularity.  As a result, the Defendants should not be forced to participate in costly discovery when the compliant does not contain enough detail. *See Twombly*, 555 U.S. at 558-59.  To allow otherwise would sanction a fishing expedition at the time and expense of the parties and the Court. *See Bissessur v. Indiana Univ.*

---

[10] These statements are so vague that they do not even satisfy the "when" requirement.

*Bd. of Trs.*, 581 F.3d 599, 603-04 (7th Cir. 2009); *see also Phillips v. Automated Tel. Mgmt. Sys., Inc.*, 160 F.R.D. 561, 563 (N.D. Tex. 1994).

3.   Plaintiff's Negligent Misrepresentation Claims

Plaintiffs have attempted to state their non-fraud claims by reference to the same factual allegations upon which their fraud claims are predicated. The Fifth Circuit has clarified how Rule 9(b) should be applied under these circumstances. *See Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2002). According to *Lone Star Ladies*, Rule 9(b)

> applies not to claims per se, but to "averments" of fraud. If such an averment is inadequate, then the court disregards it when determining whether a claim is stated. In other words, the inadequate averment is "stripped from the claim." When fraud is an element of the claim, inadequate averments necessarily result in dismissal. When fraud is not an element, as in the case of negligent misrepresentation, the inquiry is more complicated. One must first disregard inadequate averments of fraud. At that point, Rule 9(b) is no longer relevant. The remaining question is whether a negligent misrepresentation claim is stated under the standard notice pleading principles applicable to such claims.

*Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 751 (N.D. Tex. 2005) (footnotes omitted). "Thus, . . . Plaintiff's claim must be dismissed if the inadequate fraud averment is so intertwined with the [non-fraud] claim that it is not possible to describe a simple redaction that removed the inadequate fraud averment while leaving behind a viable [non-fraud] claim." *Nazarth Int'l, Inc.*, 2005 WL 1704793, at *4 (quotations and citations omitted).

In this case, Plaintiffs simply incorporate their fraud-based allegations against the Defendants and assert a claim of negligent misrepresentation. Once the inadequate averments of fraud are stripped from the complaint, there is nothing left to support a claim for negligent misrepresentation.

4. Plaintiffs' Conversion Claims

The Mississippi Supreme Court has held that "to make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 68 (¶ 50) (Miss. 2004) (*quoting Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss.1998)). There is a conversion only when there is an "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *First Investors Corp. v. Rayner,* 738 So. 2d 228, 234 (Miss. 1999).

Plaintiffs assert nothing more than conclusory allegations to support their conversion claim. They do not even describe what specifically was alleged to have been converted by any particular Defendant. Consequently, neither the Amended Complaint nor the proposed Third Amended Compliant meet the requirements of *Iqbal* and *Twombly* or Rule 8.

5. Plaintiffs' Conspiracy Claims

General allegations of conspiracy cannot survive a motion for judgment on the pleadings. *See Badon v. RJR Nabisco*, 224 F.3d 382, 391-93 (5th Cir. 2000). "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . ." *Guidry*, 954 F.2d at 281 ("'[c]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss") (citations omitted). Even if conclusory allegations were to be credited for purposes of the instant motion, Plaintiffs have not alleged the elements of a civil conspiracy claim. A civil conspiracy is "a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)). "It is elementary that a conspiracy requires an agreement between the co-

conspirators." *Id.* (citing *Brown v. State*, 796 So. 2d 223, 226-27 (Miss. 2001)).   There are no factual allegations of any agreement among the Defendants.   In both the Amended Complaint and the proposed Third Amended Complaint, Plaintiffs have merely made general allegations of conspiracy.   This is not sufficient.

   6.   Plaintiff's Proposed Securities Claims[11]

   The Third Amended Complaint attempts to assert claims for violation of Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, and Sections 12(a)(1), 12(a)(2), 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l* & 77o, as well as claims for violation of Sections 75-71-117 and 75-71-719 of the Mississippi Securities Act, Miss. Code Ann. §§ 75-71-101 *et seq.*.   At the Hearing, the Plaintiffs withdrew their Mississippi Securities Act claims. Plaintiffs also withdrew their Rule 10b-5 and Securities Act claims relating to MTW.   Apparently, the only securities claims Plaintiffs wish to pursue are their alleged claims in connection with the 2008 Offering.[12]

   Plaintiffs' claims for violation of Sections 12(a)(1), 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77*l*, 77o, cannot survive a judgment on the pleading because those sections apply only to public, not private, offerings.[13] *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ("The intent of Congress and the design of the statute require that § 12(2) liability be limited to public offerings."); *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) ("Section 12 does not apply to

---

[11] The original Complaint and Amended Complaint did not assert securities claims against the Defendants.  These proposed claims were added in the proposed Second Amended Complaint.  As discussed, by agreement of the parties, the Third Amended Complaint was substituted for the Second Amended Complaint. *See supra* note 9.

[12] "2008 Offering" is defined in the Complaint as the transaction "beginning in January of 2008 [in which] the Defendants, through Steadivest LLC, began selling membership interests in the company . . . pursuant to a Private Placement Memorandum . . . ." (Adv. Dkt. No. 90, at ¶ 21).

[13] "Section 15 of the 1933 Act imposes derivative liability on 'controlling persons' for violations of § 12.  Without a violation of § 12, there is no claim under § 15." *Lewis v. Fresne*, 252 F.3d 352, 357 n.3 (5th Cir. 2001).

private transactions . . . Congress meant for [it] to apply only to public offerings); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 532-33 (S.D. Tex. 2011) (dismissing Section 12(a)(2) claim on basis that "[c]ertificates were sold in purely private transactions"; ". . . Section 12(a)(2) does not apply to any form of private placement."). The parties do not dispute that the "2008 Offering" was a private offering.[14] *See Lewis*, 252 F.3d at 357 (*citing see Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 n.2 (7th Cir. 1995) (holding that Section 12 did not apply to a transaction involving a private placement memorandum). Therefore, because Sections 12(a)(1), 12(a)(2) and 15 are inapplicable, Defendants would be entitled to judgment on these proposed claims and an amendment to include these claims would be futile.

Likewise the claims asserted under Section 11 of the Securities Act, 15 U.S.C. § 77k, cannot survive a judgment on the pleadings because that section "provides a remedy to purchasers of *registered* securities when the registration statement contained false or misleading information." *Bamburg v. Axis Onshore LP*, No. 08-1466, 2009 WL 1579512, at *3 n.2 (W.D. La. June 4, 2009) (*citing* 15 U.S.C. § 77k). Plaintiffs allege that the securities were not registered with the Securities and Exchange Commission. (Adv. Dkt. No. 90, at ¶ 115). Therefore, Defendants would be entitled to judgment on the Section 11 of the Securities Act claim.

Even assuming that Sections 11, 12(a)(1) and (a)(2), and 15 apply, the claims asserted under these sections are barred by the three year statute of repose as set forth in 15 U.S.C. § 77m. Section 77m provides, in relevant part, "in no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security

---

[14] The proposed Third Amended Complaint alleges that the 2008 Offering was made pursuant to a "private placement memorandum" ("PPM"). (Adv. Dkt. No. 90, at 7 ¶ 21).

was bona fide offered to the public, or under section 77*l*(a)(2) of this title more than three years after the sale." 15 U.S.C. § 77m.  The 2008 Offering occurred in the "beginning [of] January of 2008;" therefore, the 3-year statute of repose expired in 2011.[16]  Plaintiffs did not attempt to amend their complaint to assert these claims until July 13, 2012, after the 3-year deadline had passed. *See In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642 (S.D.N.Y. 2011) ("tolling may not be invoked to avoid the three year statute of repose set forth in Section 13 of the Securities Act"); *see also In re Lehman Bros. Sec. and ERISA Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. 2011) ("Rule 15(c)[17] relation back doctrine does not apply to statutes of repose").

Claims asserted under Rule 10b-5[18] are subject to heightened pleading requirements imposed under Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995

---

[16] Interests were sold pursuant to the 2008 Offering as late as August of 2008, however, this does not change the analysis of the 3-year deadline expiring prior to the Plaintiffs proposed amendment of the Complaint to assert securities claims.

[17] Rule **15(c)**, addressing "**Relation Back** of Amendments", provides in relevant part,

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) **relation back** is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and within the period provided by Rule 4(m) [with 120 days following the filing of the complaint] for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

[18] Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)   To employ any device, scheme, or artifice to defraud,

("PSLA"). *R2 Invs. LDC v. Philips*, 401 F.3d 638, 642 (5th Cir. 2005). To state a claim under "Rule 10b-5, a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused plaintiff's injury." *Id.* (internal citations and quotations omitted). As to the heightened pleading requirements imposed under the PSLRA, the Fifth Circuit has noted

> In relevant part, the PSLRA provides that where the plaintiff alleges a material misstatement or omission, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997)).

*Id.* at 541-42. The Fifth Circuit has also made clear that group pleading[19] is not permitted under the PSLRA. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 288 (5th Cir. 2006); *Southland*, 365 F.3d at 363 ("PSLRA requires plaintiffs to distinguish among those they sue and

---

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

[19] "Group pleading" is a doctrine which allows "unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles." *Southland*, 365 F.3d 353, 363 (5th Cir. 2004).

enlighten each defendant as to his or her particular part in the alleged fraud."). The rationale behind the heightened pleading standard is to provide defendants with fair notice of the plaintiffs' claims, protect defendants from harm to their reputation and goodwill, reduce number of strike suits, and prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs. *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004).

As with the Plaintiffs' asserted fraud based claims, Plaintiffs[21] failed to specifically identify and distinguish among the Defendants any actions constituting alleged violations of Rule 10b-5. In connection with the 2008 Offering, the Third Amended Complaint alleges that the "Defendants" made misleading and deceptive forward looking statements in the PPM without identifying the author of such statements.[22] (Adv. Dkt. No. 90, at ¶ 21). This allegation does not satisfy the heightened pleading requirements as articulated by the Fifth Circuit. *See Southland*, 365 F.3d at 365 ("corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded" but corporate document having "no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue"). Without identifying any particular Defendant, the Plaintiffs further allege that Defendants recklessly and/or intentionally made certain written and oral representations to them designed to induce the purchase of Steadivest equity shares. Plaintiffs also assert that Harrington made presentations about the 2008 Offering and gave "pep talks" to them. (Adv. Dkt. No. 90, at

---

[21] Plaintiffs asserting claims against Steadivest, LLC include: Ray Montgomery, Jr., Alex Breeland, and Lee Breeland. (Adv. Dkt. No. 90, at ¶ 59).

[22] The PPM contains no signature or author attributing the document to a particular Defendant. (Adv. Dkt. No. 90, Ex. C).

¶ 24). These allegations do not satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. Therefore, Defendants would be entitled to judgment on the pleadings on the securities claims such that granting leave to file the Third Amended Complaint would be futile.

Plaintiffs MYSY Rental, Inc., Montgomery, and the Yarbros incorporated by reference the factual findings and conclusions of law from the Mississippi Secretary of State cases regarding the conduct of "some of the defendants in this case" and ask this Court to take judicial notice of the findings and conclusions. Reply, (Adv. Dkt. 121, at 16). However, the Court is not inclined to take judicial notice of such findings. While a court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, it cannot take notice of the factual findings of another court. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664 (N.D. Tex. 2011) ("court should only take judicial notice of facts sparingly at the pleading stages") (internal citations omitted). Even if the Court were to take judicial notice of the findings of the Mississippi Secretary of State, the findings relate only to Defendant Harrington.

7. Plaintiffs' Motions to Amend

For the reasons stated above, Defendants are entitled to judgment on the pleadings as to the Amended Complaint and would be entitled to judgment on the pleadings as to the Third Amended Complaint, such that granting leave to file the Third Amended Complaint would be futile. Therefore, the motions for judgment on the pleadings as to the Amended Complaint should be granted and the motions for leave to amend should be denied. With regard to Defendant Travelstead, the judgment shall be with prejudice. On at least four different occasions over a period of three years, beginning with the motion to dismiss filed in state court on September 28, 2009, Travelstead has apprised the Plaintiffs of the possible deficiencies in their

pleadings. Despite the breadth of case law provided by Travelstead regarding the pleading requirements, Plaintiffs' Third Amended Complaint, filed almost three years after the Amended Complaint was filed and served, still fails to state a claim against Travelstead. At the Hearing, Plaintiffs could point to no additional facts that would remedy their pleading problems as they relate to Travelstead even though they have been on notice of the deficiency arguments for three years. *See Sullivan*, 600 F.3d at 551 (district court did not abuse discretion in dismissing case with prejudice where plaintiff did nothing in months between the filing of motion to dismiss and court's ruling to further amend complaint). The fact that this case was stayed while the motion to remand was pending does not explain why Plaintiffs did not use that time to prepare a sufficient amended complaint against Travelstead. Plaintiffs' undue delay and inability to produce any facts regarding the alleged fraudulent behavior of Travelstead after having almost three years to review Travelstead's deficiency arguments and supporting case law prejudices Travelstead.

With regard to Defendants McRaney, Harrington and Adcock, Plaintiffs were placed in the unusual position of filing their amended complaint at the same time that these Defendants filed their first motions for judgment on the pleadings on July 2, 2012. Since Plaintiffs were not on notice of any particular pleading deficiencies raised by these Defendants, the Court will grant Plaintiffs 30 days from the date of the final judgment entered simultaneously wherein to file amended complaints against McRaney, Harrington and Adcock.

## CONCLUSION

For the reasons stated above, Defendants' motions for judgment on the pleadings (Adv. Dkt. Nos. 17, 65, 67, 69) are **GRANTED**. The motion to amend filed by the Yarbros, MYSY Rental, Inc. and Montgomery (Adv. Dkt. No. 75) is **DENIED** with prejudice as it relates to

Defendant Travelstead and **DENIED** without prejudice as it relates to Defendants McRaney, Harrington and Adcock.   The motion to amend filed by the Breelands (Adv. Dkt. No. 76) is **DENIED** without prejudice.   All other pending motions (Adv. Dkt. Nos. 88, 99) are **DENIED** as moot.   Plaintiffs are allowed 30 days from the date of the final judgment entered simultaneously wherein to file amended complaints against Defendants McRaney, Harrington and Adcock.   In the event that amended complaints are not filed within 30 days, this case will be dismissed.

   A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 7058.

Katharine M. Samson
United States Bankruptcy Judge
Dated:  January 24, 2013